Kevin SPRATLEY

v.

AETNA CASUALTY & SURETY CO.

v.

THE TRAVELERS.

Civ. A. No. 88–4656.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1989.

---

**596**

Robert S. Waldman, Philadelphia, Pa., for Kevin Spratley.

Warren L. Simpson, Jr., Allan D. Goulding, Jr., Rawle & Henderson, Philadelphia, Pa., for Aetna Cas. & Sur. Co.

Harry D. McMunigal, Dougherty & Stonelake, Philadelphia, Pa., for The Travelers.

## MEMORANDUM

NEWCOMER, District Judge.

Plaintiff filed this action to force the defendant Aetna Casualty and Insurance Company ("Aetna") to appoint arbitrators for an insurance arbitration hearing. Plaintiff originally filed this action in the Pennsylvania Court of Common Pleas. Aetna subsequently removed the action to this Court pursuant to 28 U.S.C. § 1332 diversity of citizenship jurisdiction. Aetna joined The Travelers ("Travelers") as a third party defendant. Travelers provides automobile insurance to the plaintiff.

### I. *Factual background.*

There is no dispute as to the issues before this Court. The case arises from an automobile accident which occurred on Route 202 in Wilmington, Delaware, on December 24, 1986. Kevin Spratley, the plaintiff, was a passenger in the automobile driven by Meldron Young, Jr. The vehicle was owned by Meldron Young, Sr. The Youngs reside in Delaware, and their vehicle is registered in Delaware. As required by Del.Code Ann. tit. 18 § 3202 Mr. Young had obtained a policy from Aetna which provided for uninsured motorist coverage for the car.

The accident occurred as Young, Jr. and Mr. Spratley were proceeding westbound on Route 202. Young observed a vehicle stopped, apparently disabled, blocking his lane. Young was able to stop his car before striking the disabled vehicle. Moments later, however, Young's car was struck from behind by a car driven by Juanita Tate. Tate's car then was struck by another car driven by Steven Simpson. This "second impact" forced Tate's car into Young's car which was propelled into the disabled vehicle. Mr. Spratley was injured as a result of the collisions.

Plaintiff, a Pennsylvania resident, owns an automobile which is registered in Pennsylvania. Plaintiff insured his vehicle, at all times material to this case, with a policy issued by Travelers. The Travelers policy also provides for uninsured motorist coverage. The other cars involved were insured as follows: The disabled car and its driver were not insured. The Tate and Simpson vehicles, both registered in Delaware, were insured at the time of the accident. Plaintiff has not filed an action against Tate or Simpson. Travelers has not provided any insurance benefits to the plaintiff arising from this accident.

### II. *Choice of law.*

■ The parties agree that Delaware substantive law applies in this matter. I concur. The choice of law rule of the forum in which a United States District Court is located governs the choice of law for

actions in that court. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 489, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shields v. Consolidated Rail Corporation,* 810 F.2d 397, 399 (3d Cir.1987). Therefore, Pennsylvania's choice of law principles determine which state's substantive law applies in any appropriate case heard in this Court.

Pennsylvania employs, as its choice of law standard, what is known as the "significant relationship" test. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). *See also Melville v. American Home Assurance Co.,* 584 F.2d 1306, 1311–13 (3d Cir.1978). Pursuant to this test the state "having the most interest in the problem and which is most intimately concerned with the outcome is the forum whose law should apply." *Breskman v. B.C.B. Inc.,* slip op. at 3 (E.D.Pa. September 26, 1988) (*citing In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 882 (3d Cir.1984)).

Under the "significant relationship" test, Delaware is the forum with the greatest interest in the outcome of this case. Aetna issued the policy at issue in Delaware to a Delaware resident. The uninsured motorist portion of the policy was written to be consistent with Delaware uninsured motorist insurance law as set forth in Delaware Code, Title 18 § 3202. The accident occurred in Delaware, and all drivers involved operated cars registered in Delaware.

III. *Discussion.*

The fundamental issue in resolving these motions for summary judgment is whether the plaintiff is precluded, at this time, pursuant to Mr. Young's insurance policy, from seeking uninsured motorist benefits from Aetna. For its part, Aetna claims that the policy at issue requires plaintiff to first seek uninsured motorist benefits from his insurer, Travelers.

A. Summary judgment standard.

A trial court may enter summary judgment if, after a review of all evidentiary material in the record, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Long v. New York Life Insurance Co.,* 721 F.2d 118, 119 (3d Cir.1983); *Bank of America National Trust and Savings Association v. Hotel Rittenhouse Associates,* 595 F.Supp. 800, 802 (E.D.Pa. 1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the nonmoving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 883 (3d Cir.) *cert. denied* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

With regard to the motions before me now the parties agree that this matter may be disposed on summary judgment. The two defendant insurance companies agree as to what the relevant language of the Aetna policy is and how it reads; they disagree only as to interpretation. Moreover, neither defendant takes issues with the plaintiff's assertion that, upon the Court's resolution of the contract interpretation conflict, one of the defendants should be ordered to participate in arbitration. It will be the duty of the arbitrators to resolve the underlying liability issue with regard to the automobile accident.

B. Applicable policy language.

▪ Part C of the Aetna policy at issue contains the agreement between insured and insurer as to the uninsured motorist coverage provided by the policy. It is clear from the Aetna policy that plaintiff is considered a "covered person" entitled to receive, when specific conditions are satisfied, uninsured motorist benefits. The policy provides in relevant part:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

(1) sustained by a covered person; and,

(2) caused by an accident.

The owner's or operator's liability for these damages must arise out of the

maintenance or use of the uninsured motor vehicle.

\* \* \* \* \* \*

"Covered person" as used in this part means: ... (2) any person occupying your covered auto.

Clearly, Mr. Spratley fits within the parameters of this definition. First, an accident occurred, caused, arguably, by the negligence of a driver of an uninsured motor vehicle, i.e. the disabled vehicle. Second, Mr. Spratley was injured while he was a passenger in the car insured under this policy. Thus, if plaintiff can prove at arbitration that the driver of the uninsured motor automobile is liable for his injuries, then Mr. Spratley is a "covered person".

The central point of contention between the parties focuses on the "Other Insurance" clause of Aetna's policy at issue. The clause provides:

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limits of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable insurance.

Travelers argues that the phrase "with respect to a vehicle you do not own shall be excess ..." refers only to the situation where the insured, namely Mr. Young, Sr., were to be injured and seek recovery from Aetna. On the other hand, Aetna argues that the terms are unambiguous and refer to all uninsured motorist coverage provided through any relevant policy.

C. Interpretation of the Contract.

1. *Internal contract inconsistencies.*

It is a basic rule of Delaware contract law that internal inconsistencies of a contract be resolved without elimination of any contract provisions. *W.R. Ferguson, Inc. v. William A. Berbusse, Jr., Inc.,* 9 Storey 229, 59 Del. 229, 216 A.2d 876, 877 (1966). Therefore, when interpreting the "Other Insurance" clause I must interpret the provisions therein so as to give each meaning, if possible.

The "other insurance" clause can be broken down into two parts or provisions. The first part states that if there is other insurance which would pay for the injuries of a covered person under the Aetna policy, then Aetna will only pay its portion of the recovery (the "Proportion Provision"). The second part states that under certain circumstances Aetna will not pay a proportion but rather only excess over other collectable insurance (the "Excess Provision"). This "Other insurance" clause of Part C applies only to the uninsured motorist coverage provided by the policy in Part C.

Aetna argues that the plaintiff, given that he was not the owner of the car in which he was riding at the time of the accident, is within the Excess Provision of the contract. This argument has no merit. The plaintiff is not a party to the contract. The clause, "with respect to a vehicle you do not own" is addressed only to Mr. Young, the policy holder. The term "covered person" as defined in Part C makes clear that the term "you" is merely a subclass of the group identified as "covered persons". The contract refers to the term "you" only when making reference to the policy holder, who is not the plaintiff in this matter.

Moreover, Aetna's general argument that the Excess Provision applies to the plaintiff's situation renders the Proportion Provision devoid of any meaning. The nature of the uninsured motorist coverage is that it must be the result of an accident, or other similar interaction, involving an insured and an uninsured vehicle that the insured does not own. After all, the insured, Mr. Young, and his automobile are insured by the Aetna policy at issue. Therefore, under Aetna's interpretation of the Excess Provision there could be no situation in which the Proportion Provision would have meaning and effect.

Travelers' interpretation of the clause is logical in that it allows both the Excess Provision and the Proportion Provision to have meaning. Travelers argues that the Excess Provision applies only to those situations in which the covered person is making a claim for uninsured motorist benefits

for an accident where the covered person was injured while a passenger in a car that Mr. Young (the "you" in the provision) does not own. When Mr. Young or one his family members is in an accident while in a car not owned by Mr. Young, the Excess Provision becomes operative. I determine this interpretation of the contract to be the intent of the parties at the time that it was signed. This interpretation allows for both the Excess Provision and the Proportion Provision to have meaning as required under Delaware contract law as set forth in *W.R. Ferguson, Inc., supra.*

2. *Insurance contract construction.*

Although I find the application of the rule of *W.R. Ferguson, Inc.,* dispositive as to the interpretation of the contract, Delaware law, specific to the interpretation of insurance contracts, also mandates the same result. The insurance policy in question here is an adhesion contract, in that, like other automobile insurance contracts, it is not the result of arm's length negotiations as to its language. The Delaware courts have developed a general rule that insurance adhesion contracts are to be construed strongly against the insurer when the insurer drafts the contract language. *Hallowell v. State Farm Mutual Automobile Insurance Co.,* 443 A.2d 925, 926 (Del. 1982). Such construction is in order, however, only when the Court determines that there is an ambiguity in the contract language. *Id.* I determine, as a matter of law, that the provisions in question are significantly ambiguous so that I must apply this general rule of construction. My discussion of the provisions, *supra,* indicates that a legitimate question exists as to the meaning of the "Other Insurance" clause.

The question then arises as to how, if the contract is to be interpreted against the insurer and in favor of the insured, can plaintiff, who is not a party to the contract, enjoy the benefit of this rule. The reasons allowing plaintiff to have full advantage of this rule are twofold. First, although plaintiff is not a party to the contract he is insured under the contract to the extent that he is a "covered person" under Part C

of the policy. Second, an interpretation in favor of Mr. Spratley would also benefit Mr. Young. Mr. Young, when becoming insured under the policy, believed he purchased a certain amount of coverage. Aetna's interpretation of the policy would effect a limitation upon the coverage that Mr. Young believed that he received in exchange for his premium payments. Mr. Young purchased insurance, not only for himself and his family, but also for anyone else who was a passenger in his car. Any interpretation in Aetna's favor in this regard would diminish the amount of coverage Young received for his payments. For these reasons I conclude that the Delaware rule for insurance contracts applies in this situation. Thus, the policy is to be construed in favor of Mr. Spratley.

### IV. *Conclusion.*

For the forgoing reasons, jointly and severally, I conclude that the insurance contract between Young and Aetna subjects Aetna to provide insurance pursuant to the Proportion Clause of the "Other Insurance" clause. Therefore I will order Aetna to proceed to arbitration in a manner consistent with the policy and this Opinion. Aetna shall appoint its arbitrator pursuant to the agreement as set forth in the insurance policy at issue with 20 days of the date of this Order.